

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-20-00022-CV

———————————————————

IN THE INTEREST OF E.C., A CHILD

On Appeal from the 323rd District Court
Tarrant County, Texas
Trial Court No. 323-102320-15

Before Birdwell, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

This is an ultra-accelerated appeal[1] in which Appellant V.C. (Mother)[2] appeals the termination of her parental rights to her child, Evan.[3] In three issues, Mother argues that the evidence is factually insufficient to support the trial court's findings under Family Code Sections 161.001(b)(1)(D) (endangering environment), (b)(1)(E) (endangering conduct), (b)(1)(O) (failing to complete service plan), (b)(1)(P) (failing to complete substance-abuse treatment program or continuing to abuse controlled substances after completing substance-abuse program), and (b)(2) (best interest). *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E), (O), (P), (b)(2). Because the evidence, which included Mother's extensive seventeen-year history of illegal drug use, is factually sufficient to support the trial court's endangering-conduct and best-interest findings, and because only one predicate ground listed in Section 161.001(b)(1) is necessary for termination of parental rights, we affirm.

---

[1]*See* Tex. R. Jud. Admin. 6.2(a) (requiring appellate court to dispose of appeal from a judgment terminating parental rights, so far as reasonably possible, within 180 days after notice of appeal is filed).

[2]Father's parental rights were not terminated; he was appointed possessory conservator and did not file a notice of appeal.

[3]*See* Tex. R. App. P. 9.8(b)(2) (requiring court to use aliases to refer to minors in an appeal from a judgment terminating parental rights). The child is thus referred to using an alias. We refer to other family members by their relationship to Evan. *See id.* (requiring courts, if needed to protect the minors' identities, to also use aliases when referring to family members); *see also* Tex. Fam. Code Ann. § 109.002(d).

# I. Background and Trial Evidence

In January 2019, the Department of Family and Protective Services (the Department) obtained an order of protection and removed Evan from his Mother's care the day after the Department was alerted that Evan had been left at a daycare three hours after it had closed. In October 2019, the Department filed its first amended petition for conservatorship and to terminate Mother's and Father's parental rights. The trial court held a one-day bench trial on December 2, 2019. Mother did not testify. The testimony presented is as follows.[4]

## A. CPS investigator

Jarrett Price, an investigator with Child Protective Services (CPS), testified that on January 16, 2019, the Department received a report that a toddler, Evan, had been left at daycare that day for three hours after the daycare had closed. Price was assigned to the case. The police immediately investigated and went to Mother's home. Police found Mother at the home; she had been sleeping and admitted that she had been doing methamphetamine for the prior three days. That night, police left the child with his maternal grandmother (Grandmother) and his maternal aunt (Aunt J).

Price testified that the Department looked into Grandmother's and Aunt J's backgrounds and determined that Evan would not be safe with them due to Aunt J's

---

[4]Our discussion of the evidence does not include evidence relating to Father beyond what is necessary to provide context for Mother's issues on appeal. We will address additional evidence relating to Father as necessary when discussing Mother's issues on appeal.

extensive history with CPS. Although Grandmother seemed appropriate, the Department was concerned that Grandmother would leave Evan in Aunt J's care because they lived together. The Department also looked into another maternal aunt, Aunt K; but a background check on Aunt K and her husband revealed that Aunt K had a history of family violence and that her husband had an assault charge and a history of drug charges. Thus, on January 17, 2019, the Department obtained an Order for Protection, removed Evan, and placed the child in CPS custody.

According to Price, CPS met with Mother the following day; Mother admitted that she had been using methamphetamine and marijuana on a daily basis. CPS met with Mother again the following week; Mother again admitted that she had been using drugs since she was fifteen years old. Price further testified that Mother specifically admitted that she had been using methamphetamine after having been recently evicted from her apartment.

Price testified that his conclusion was that there was "reason to believe"[5] the allegations of Mother's neglectful supervision and that it was necessary for Evan's safety for him to be removed from Mother's care.

---

[5]After investigating a child-abuse or -neglect allegation, the Department assigns one of five possible dispositions: (1) reason to believe (based on a preponderance of the evidence); (2) ruled out; (3) unable to complete; (4) unable to determine; or (5) administrative closure. 40 Tex. Admin. Code § 700.511(b) (Tex. Dep't of Family & Protective Servs., Disposition of the Allegations of Abuse or Neglect); *In re A.B.-G.*, No. 02-19-00066-CV, 2019 WL 3755770, at *2 n.4 (Tex. App.—Fort Worth Aug. 8, 2019, pet. denied) (mem. op.).

## B. Conservatorship worker

Karen Soto, a conservatorship worker for CPS, testified that she was assigned Evan's case in January 2019 and that she had been the only caseworker for Evan. According to Soto, Evan was three years old when he went into care in January 2019; he was four by the time of trial.

Soto testified that Mother had an extensive history with the Department: (1) in 2011, there was a reason-to-believe finding of neglectful supervision of an older child due to Mother's methamphetamine use that resulted in the older child being removed from Mother's care and permanently placed with a relative; (2) in 2015, there was an unable-to-determine disposition of neglectful supervision of Evan due to Mother's methamphetamine use; and (3) in 2017, there was a reason-to-believe finding of neglectful supervision of Evan, again due to Mother's methamphetamine use. The family service plan, which the trial court admitted into evidence, states that Evan had once been removed from Mother's care after he tested positive for methamphetamine.

According to Soto, when she met with Mother, Mother was living with Grandmother and Aunt J. Soto discussed with Mother that she needed to identify what was causing her to use methamphetamine and what her triggers were because this was not the first time that Mother had a CPS case based on her drug use. The family service plan provided that Mother was required, among other things, to

- maintain at least biweekly contact with the caseworker and provide check stubs to show that she was able to provide Evan with his basic needs;

- maintain a safe, stable, appropriate, drug-free, and financially stable home;

- attend, participate, and complete FOCUS (Families Offering Children Unfailing Support)[6] Motherhood support group classes and not miss more than two classes;

- participate in individual counseling until she was discharged by the therapist upon completion, to not miss more than three sessions without appropriate cancellation notice, and to make up any missed sessions;

- participate in Narcotics Anonymous meetings (with 90 meetings in 90 days encouraged) and provide her caseworker with her schedule and sign-in sheet to prove her attendance;

- maintain weekly visits with Evan;

- submit to random drug testing on request (with the failure to submit constituting a presumed positive result for all substances); and

- complete a drug assessment and follow all treatment recommendations, up to and including inpatient treatment.

The trial court made the family service plan an order of the court at a November 2019 permanency hearing.

Soto testified that Mother was not compliant with the service plan; that Mother could not meet Evan's emotional and physical needs; that Mother was not able to provide Evan with a safe, appropriate, and sober environment; and that it was in Evan's best interest for her parental rights to be terminated.

---

[6]*See* NewDay Services for Children and Families, *Motherhood*, https://www.newdayservices.org/motherhood.html (last visited Apr. 22, 2020).

6

**Employment and housing:** Regarding Mother's employment, Soto testified that in November 2019, Mother told her that she had obtained employment at AT&T Stadium, but Mother was not able to provide Soto with any letters verifying that employment; prior to November, Mother had remained unemployed. As to housing, Soto testified that Mother continued living with Grandmother and Aunt J and that this was not an appropriate place for Evan due to Aunt J's CPS history.

**Parenting classes and drug treatment:** According to Soto, in May 2019, Mother completed FOCUS for Mothers. Soto also referred Mother to CATS[7] for outpatient drug treatment, but Mother attended only five out of roughly thirty-five possible weekly group sessions. Mother never provided Soto with any sign-in sheets or attendance dates showing that she had attended NA. Mother told Soto that she had a sponsor and gave Soto a name and phone number, but Soto never reached anybody despite leaving multiple voicemails. Soto further testified that she had given Mother the option to enter into a drug-court program, but Mother did not do so.

**Inpatient rehab and drug testing:** Soto testified that in July 2019, Mother successfully completed inpatient rehab at Nexus. But Mother had admitted to continuing to use drugs up until the time she started rehab. Before going to rehab, Mother tested positive for amphetamine and methamphetamine on a urinalysis and a hair-follicle drug test on January 23, 2019, and in a urinalysis on May 15, 2019. The

---

[7]According to the Department's brief, CATS stands for Community Addiction Treatment Services.

record reflects that Mother then failed to submit to requested drug testing in June, July, and September 2019. According to Soto, after Mother completed rehab, Mother tested positive for methamphetamine on a hair-follicle test on October 2, 2019, but tested negative on a urinalysis on October 25, 2019.

Soto testified that she spoke with Mother about the post-rehab positive result, and Mother admitted that she had used when she had hung out with some friends. Soto then sent Mother for another drug assessment, but Mother did not go. Soto also asked Mother to get additional testing, but Mother either did not respond or stated that she did not have a ride to the testing, despite Soto's providing Mother with bus passes and texting Mother early enough to find a ride.

**Counseling:** According to Soto, Mother began counseling around February 2019, but Mother attended only eight out of roughly thirty-five to forty possible sessions with the counselor. The counselor discharged Mother in October because Mother consistently failed to show up for sessions.

The counselor's records, which the trial court admitted into evidence, reflected that Mother had admitted to the counselor that she had been using methamphetamine off and on for seventeen years, since she was thirteen years old; that she used drugs when she saw male "old friends"; and that she had gotten back on drugs when she "had to go back to trickin'" after losing her job. The counselor's records also reflect that in May, Mother reported to the counselor that the longest she had stayed clean in the prior six months was ten days, that she was "continuing to 'ho' to make money

8

and buy drugs," that she was "making things up" at her outpatient groups, and that she had been arrested for prostitution (charges that Mother denied). The counselor recorded in her records that Mother "shared minimally" with her but that Mother was tearful at times about wanting to be with Evan and expressed a desire to get and stay sober.

Soto testified that based on her understanding of the records and her communications with the counselor, Mother had not addressed the issues as to why Evan had come into the Department's care and that Mother had no sobriety plan in place. This was concerning to Soto because if Mother did not address what had caused her to use, then she would always fall back into using.

**Visitation:** According to Soto, Mother missed only four visits with Evan throughout the entirety of the case. Soto observed some of these visits and testified that Mother was never inappropriate with Evan; Mother knew how to interact with Evan, but there "wasn't really much of a bond there."

**Endangerment:** Soto testified that she believed Mother endangered Evan prior to Evan's removal because Evan was very young and unable to care for himself. She explained that it is important that a parent be sober and aware of what a child is doing and to make sure the child has a safe place. According to Soto, Mother had been "down this road before with CPS" and was old enough to know that she needed to stop using methamphetamine after having had a seventeen-year history of using; any period of sobriety during that seventeen years had been intermittent. Soto

9

testified that after talking to Mother and the counselor, she did not believe that Mother wanted to completely change and that Mother "was trying to do what she could without actually trying."

**Evan's well-being:** As to Evan's living situation, Soto testified that Evan has been in the same adoption-motivated foster home since coming into care in January 2019. He had been with that family almost a year by the time of trial. Soto testified that Evan sees the other kids at that home as his siblings and is doing "really great" there.

## C. Attorney ad litem

The attorney ad litem for Evan stated that Evan was doing well in his current placement; that Evan had basically been in the foster system since age two; that he was bonded to the foster family; that Evan called the other kids in the home his siblings; and that she was in agreement with the recommendation to terminate Mother's parental rights.

## D. Outcome

After the trial, the trial court issued an order on December 20, 2019, that terminated Mother's parental rights to Evan. The trial court found that Mother had violated four of the conduct grounds alleged by the State: Grounds (D) (endangering environment), (E) (endangering conduct), (O) (failing to complete service plan), and (P) (failing to complete substance-abuse treatment program or continuing to abuse a controlled substance after completing a substance-abuse program). The trial court

10

appointed the Department as managing conservator and Father as possessory conservator.[8]

## II. Burden of Proof and Standard of Review

For a trial court to terminate a parent–child relationship, the Department must prove two elements by clear and convincing evidence: (1) that the parent's actions satisfy one ground listed in Family Code Section 161.001(b)(1); and (2) that termination is in the child's best interest. Tex. Fam. Code Ann. § 161.001(b); *In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007; *E.N.C.*, 384 S.W.3d at 802.

We must perform "an exacting review of the entire record" in determining the factual sufficiency of the evidence supporting the termination of a parent–child relationship. *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014). Nevertheless, we give due deference to the factfinder's finding and do not supplant it with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam). We review the whole record to decide whether a factfinder could reasonably form a firm conviction or belief that Mother violated a predicate ground listed in Section 161.001(b)(1) and that termination of the parent–child relationship would be in the child's best interest. *See*

---

[8]Father was incarcerated at the time of trial; he had been incarcerated before Evan was removed in January 2019 and before the DNA results confirmed that he was Evan's Father.

11

Tex. Fam. Code Ann. § 161.001(b); *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). If the factfinder reasonably could form such a firm conviction or belief, then the evidence is factually sufficient. *C.H.*, 89 S.W.3d at 18–19.

Clear and convincing evidence of one pleaded conduct ground is sufficient to support a termination decision if coupled with sufficient best-interest evidence. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re D.M.*, 58 S.W.3d 801, 813 (Tex. App.—Fort Worth 2001, no pet.). But if one of the pleaded and found conduct grounds is based on endangerment—Section 161.001(b)(1)(D) or (E)—then we are required to fully address that ground, if presented on appeal, based on the future collateral consequences of such a finding. *See In re N.G.*, 577 S.W.3d 230, 235–37 (Tex. 2019) (per curiam); *see also* Tex. Fam. Code Ann. § 161.001(b)(1)(M) (allowing termination of parent's parental rights if such rights to another child had been terminated under Section 161.001(b)(1)(D) or (E)).

## III.   There Is Factually Sufficient Evidence to Support the Trial Court's Endangerment Findings.

In Mother's first issue, she argues that the evidence is factually insufficient to support the trial court's finding that she violated the two endangerment grounds in Section 161.001(b)(1)(D) and (E) of the Family Code. We conclude that there was factually sufficient evidence to support termination under Subsection (E) and thus need not address Subsection (D). *See In re T.C.*, No. 02-19-00291-CV, 2019 WL 6606172, at *1 n.3 (Tex. App.—Fort Worth Dec. 5, 2019, pet. denied) (mem. op.)

12

("We read *N.G.* to say that an affirmance under either (D) *or* (E) suffices because under (M) an affirmance under one makes the other moot."); *accord In re A.S.*, No. 02-19-00422-CV, 2020 WL 990028, at *5 (Tex. App.—Fort Worth Mar. 2, 2020, no pet. h.) (mem. op.).

## A.    Applicable law

Subsection (E) provides that parental rights may be terminated if the parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct [that] endangers the physical or emotional well-being of the child." Tex. Fam. Code Ann. § 161.001(b)(1)(E). To "endanger" means to expose a child to loss or injury, or to jeopardize a child's emotional or physical health. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *see In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam); *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). Under Subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *J.T.G.*, 121 S.W.3d at 125. Subsection (E) requires not just a single act or omission but rather a voluntary, deliberate, and conscious course of conduct by the parent. *Id.*

To support termination under Subsection (E), it is not necessary to establish that a parent intended to endanger a child. *M.C.*, 917 S.W.2d at 270. Nor is it necessary to establish that the conduct was directed at the child or that the child actually suffered injury. *Id.* at 269; *Boyd*, 727 S.W.2d at 533. Rather, it is sufficient if

13

the parent's conduct endangered the child's well-being. *See Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 616–17 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). The endangering conduct does not have to occur in the child's presence. *Id.* at 617. The conduct may occur before the child's birth and either before or after the child's removal by the Department. *Id.*; *see also In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). A parent's past endangering conduct may create an inference that the past conduct may recur and further jeopardize the child's present or future physical or emotional well-being. *See D.M.*, 58 S.W.3d at 812.

"As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child." *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied). A parent's use of illegal drugs, and its effect on his or her ability to parent, may qualify as endangering conduct. *See J.O.A.*, 283 S.W.3d at 345. Evidence of improved conduct, especially of short duration, does not conclusively negate the probative value of a long history of drug use and irresponsible choices. *In re S.L.-E.A.*, No. 02-12-00482-CV, 2013 WL 1149512, at *8 (Tex. App.—Fort Worth Mar. 21, 2013, pet. denied) (mem. op.) (citing *J.O.A.*, 283 S.W.3d at 346). A parent's criminal conduct, convictions, or imprisonment is relevant to the question of whether he or she engaged in an endangering course of conduct. *In re S.R.*, 452 S.W.3d 351, 360–61 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *A.S. v. Tex. Dep't of Family & Protective Servs.*, 394 S.W.3d 703, 712–13 (Tex. App.—El Paso 2012, no pet.). Routinely subjecting a

child to the probability that the child will be left alone because a parent is in jail endangers the child's physical and emotional well-being. *See S.L.-E.A.*, 2013 WL 1149512, at \*8; *In re S.M.*, 389 S.W.3d 483, 492 (Tex. App.—El Paso 2012, no pet.).

## B.     Discussion

As noted above, a parent's use of illegal drugs—and the drug's effect on his or her ability to parent—may qualify as endangering conduct. *See J.O.A.*, 283 S.W.3d at 345. In this case, Mother admitted that she had been using drugs since she was approximately thirteen or fifteen years old (approximately seventeen years). She specifically admitted on more than one occasion to having used methamphetamine. In May 2019, she reported that the longest period of time during which she had remained sober over the previous six months had spanned only ten days, a time period that included roughly two months prior to Evan's removal from her care.

After Evan's removal, Mother admitted to continuing to use drugs until she entered inpatient treatment at Nexus in July 2019. Before going to rehab, Mother tested positive for methamphetamine and subsequently failed to submit to additional testing. Although she completed rehab, Mother subsequently tested positive for methamphetamine and, when confronted with those results, admitted that she had used again. After that confrontation, Mother failed to comply with the caseworker's requests for her to submit to additional drug testing. The trial court could have reasonably inferred that Mother had avoided testing because she was using drugs. *See In re W.E.C.*, 110 S.W.3d 231, 239 (Tex. App.—Fort Worth 2003, no pet.). Mother

15

also attended few CATS sessions and, according to the counselor's notes, had made things up at the sessions she did attend. And Mother failed to show her attendance at any NA meetings.

Additionally, the counselor's notes indicated that while the case was pending, Mother had resorted to "trickin'" to make money and that she had been arrested for prostitution once. Criminal conduct, convictions, and imprisonment are relevant when determining whether a parent has engaged in an endangering course of conduct. *S.R.*, 452 S.W.3d at 360–61; *A.S.*, 394 S.W.3d at 712–13. Imprisonment alone is not an endangering course of conduct but is a fact properly considered on the endangerment issue. *Boyd*, 727 S.W.2d at 533–34. A child's emotional well-being can be negatively affected when a parent repeatedly commits criminal acts that subject the parent to incarceration, resulting in the parent's absence from the child's life and the inability to provide support, and thus creating an emotional vacuum in the child's life and subjecting the child to ongoing uncertainty regarding who will take care of him. *S.L.-E.A.*, 2013 WL 1149512, at *8.

Mother's voluntary drug use, which included nearly daily drug use, and other criminal actions subjected Evan to a life of uncertainty and instability and allowed an inference that similar conduct would recur if Evan was returned to Mother. Mother's seventeen-year history of drug use resulted in an older child's removal from Mother's care and placement with a relative. Despite the removal of this older child and two prior cases involving Evan due to Mother's drug use, one of which included Evan's

testing positive for methamphetamine, Mother continued to use drugs leading up to Evan's removal; her drug use caused her to leave Evan at daycare for hours after it had closed because she had fallen asleep after having used methamphetamines for three days. And then Mother continued using drugs throughout the duration of the case.

On appeal, Mother does not address her drug use and instead argues that she was not afforded any unsupervised access during the pendency of the case during which time she would have endangered the child. But Mother cites no authority standing for the proposition that a parent must be provided an opportunity to endanger a child in an unsupervised visit in order to establish the parent's violation of Subsection (E). As noted above, a parent's continuing course of conduct can include conduct outside the child's presence, conduct before and after the child's removal from the parent's care, and even conduct taking place before the child's birth. *See J.O.A.*, 283 S.W.3d at 345; *Walker*, 312 S.W.3d at 616–17; *D.M.*, 58 S.W.3d at 812.

We hold that the evidence, viewed in the appropriate deferential light, was factually sufficient to reasonably form a firm conviction or belief to support the finding that Mother had engaged in conduct or had knowingly placed Evan with persons who had engaged in conduct that had endangered Evan's physical or emotional well-being. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(E); *C.H.*, 89 S.W.3d at 25 (stating that to be factually sufficient, on the entire record, a factfinder must be able to reasonably form a firm conviction or belief that the parent violated an alleged

ground). Because the evidence was factually sufficient to support termination under

Subsection (E), Mother's factual-sufficiency challenge under Subsection (D)

(endangering environment) is moot.[9]  *See* Tex. Fam. Code Ann. § 161.001(b)(1); *A.S.*,

2020 WL 990028, at *5; *T.C.*, 2019 WL 6606172, at *1 n.3.  We overrule Mother's first

issue.

## IV.  Mother's Factual-Sufficiency Challenge to the Trial Court's Findings that She Had Violated Section 161.001(b)(1)(O) and (P) Is Moot.

In Mother's second issue, she contends that the evidence is factually

insufficient to support termination of her parental rights under Subsections (O)

(failing to complete service plan) and (P) (failing to complete substance-abuse

treatment program or continuing to abuse controlled substances after completing

---

[9]Even if we were to address Mother's factual-sufficiency challenge under Subsection (D), we would conclude that the same above-described evidence reflecting Mother's drug use before Evan's removal in January 2019 was also factually sufficient to show that Mother had knowingly placed or had allowed Evan to remain in conditions or surroundings that had endangered Evan's physical or emotional well-being.  *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D); *M.C.*, 917 S.W.2d at 269 (stating that Subsection (D) requires a showing that the child's environment—the child's living conditions along with the conduct of parents or others in the home—endangered the child's physical or emotional health); *see also In re J.R.*, 171 S.W.3d 558, 569 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (stating that the relevant time frame under Subsection (D) is before the child's removal from the parent's care). Mother's arguments on appeal—that there was no evidence that Evan's living conditions were unsuitable, that Mother was not meeting Evan's emotional or physical needs, or that Evan was injured prior to his removal—do not point to any disputed evidence, let alone significant evidence, that failed to reasonably support the trial court's endangerment finding under Subsection (D).  *See H.R.M.*, 209 S.W.3d at 108.  Further, as explained above, Mother admitted to essentially daily drug use before Evan's removal; such use resulted in her failure to pick up Evan from daycare, and Evan had previously tested positive for methamphetamine.

substance-abuse program) of Family Code Section 161.001(b)(1). Because we held the evidence factually sufficient under Subsection (E), we need not address the other conduct grounds found by the trial court. *See* Tex. R. App. P. 47.1; Tex. Fam. Code Ann. § 161.001(b)(1); *A.V.*, 113 S.W.3d at 362; *In re D.D.G.*, 423 S.W.3d 468, 475 (Tex. App.—Fort Worth 2014, no pet.). We thus overrule Mother's second issue as moot.

## V. The Evidence Is Factually Sufficient to Support the Finding that Termination of the Parent–Child Relationship Between Mother and Evan Was in the Child's Best Interest.

In her third issue, Mother challenges the factual sufficiency of the evidence to support the trial court's finding that termination of her parental rights was in Evan's best interest. We resolve this issue against Mother.

## A. Applicable law

Although we generally employ a strong presumption that keeping a child with a parent is in the child's best interest, *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam), the best-interest analysis is child-centered, focusing on the child's well-being, safety, and development, *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). We review this issue under the review standards stated regarding the conduct grounds. *A.S.*, 2020 WL 990028, at *6. Evidence probative of a child's best interest may be the same evidence that is probative of a Subsection (b)(1) ground. *In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013); *C.H.*, 89 S.W.3d at 28; *see* Tex. Fam. Code Ann. § 161.001(b).

We also consider the evidence in light of nonexclusive factors that the factfinder may apply in determining the child's best interest:

> (A)   the [child's] desires . . . ;
>
> (B)   the [child's] emotional and physical needs[,] . . . now and in the future;
>
> (C)   the emotional and physical danger to the child now and in the future;
>
> (D)   the parental abilities of the individuals seeking custody;
>
> (E)   the programs available to assist these individuals to promote the [child's] best interest . . . ;
>
> (F)   the plans for the child by these individuals or[, if applicable,] by the agency seeking custody;
>
> (G)   the stability of the home or proposed placement;
>
> (H)   the [parent's] acts or omissions . . . indicat[ing] that the existing parent–child relationship is not a proper one; and
>
> (I)   any excuse for the [parent's] acts or omissions.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (citations omitted); *see E.C.R.*, 402 S.W.3d at 249 (stating that in reviewing a best-interest finding, "we consider, among other evidence, the *Holley* factors" (footnote omitted)); *E.N.C.*, 384 S.W.3d at 807. These factors are not exhaustive, and some listed factors may not apply to some cases. *C.H.*, 89 S.W.3d at 27. Furthermore, undisputed evidence of just one factor may be sufficient to support a finding that termination is in the child's best interest. *Id.* On the other hand, the presence of scant evidence relevant to each factor will not support such a finding. *Id.*

**B.    Analysis**

As to Evan's desires, Mother argues on appeal that the Department presented no evidence of the child's desires. Although Evan did not testify, the record reflects that Evan was four years old at the time of the trial. When children are too young to express their desires, the factfinder may consider whether the child has bonded with his or her current caregivers, is well-cared for by them, and has spent minimal time with the parent. *In re J.V.*, No. 02-19-00392-CV, 2020 WL 1540865, at *6 (Tex. App.—Fort Worth Apr. 1, 2020, no pet. h.) (mem. op.); *In re V.B.*, No. 02-17-00318-CV, 2018 WL 771976, at *7 (Tex. App.—Fort Worth Feb. 8, 2018, no pet.) (mem. op.); *S.R.*, 452 S.W.3d at 369.

Here, although the evidence demonstrated that Mother had missed only four of her weekly visits with Evan during the case and that Mother was not inappropriate with Evan during those visits, the caseworker testified that there "wasn't really much of a bond there." The testimony was that Evan had essentially been in foster care since he was two years old. The record reflects that since his removal in January 2019, Evan had been with the same adoption-motivated foster family and that he was doing "really great" in their care, was bonded to his foster family, and saw the other children in the home as his siblings. The trial court was entitled to find that this factor weighed in favor of terminating Mother's parental rights.

With regard to Evan's physical and emotional needs now and in the future and the physical and emotional danger to Evan now and in the future, the record reflects

that Mother, by her own admission, had been using drugs for seventeen years and that because of such drug use, she had left Evan at daycare for hours after it had closed and had previously caused Evan to test positive for methamphetamine. In May 2019, Mother had admitted that her longest period of sobriety had been only ten days in the previous six months. The record further reflects that Mother had resorted to "trickin'" and to "ho[ing]" to make money and had been arrested for prostitution during the pendency of the case. Mother, having been evicted from her apartment, was living with Grandmother and Aunt J (who had an extensive CPS history) and had failed to demonstrate to her caseworker that she had obtained employment during her case. Mother was unemployed for most of the case and then did not verify her employment after stating that she had obtained a position at AT&T Stadium. Mother's continuous drug use posed a danger to Evan due to the risk of her being incarcerated and, as noted by the caseworker, due to Mother's inability to ensure that Evan was safe. Evan's young age prevents him from caring for himself. The trial court was entitled to find that these factors weighed heavily in favor of terminating Mother's parental rights.[10]

As to Mother's parental abilities, the record reflects that Mother completed FOCUS for Mothers, missed only four of her weekly visits with Evan, and was

---

[10]For the same reasons, we also reject Mother's argument that the Department presented no evidence of Evan's emotional and physical needs that Mother would be unable to meet. Additionally, Mother's argument does not point to any disputed evidence, let alone significant evidence, that failed to reasonably support the trial court's best-interest finding. *See H.R.M.*, 209 S.W.3d at 108.

appropriate with Evan during those visits. But Mother continued using illegal drugs, including methamphetamine, before and throughout the case despite (1) the Department's removing one older child from Mother's care and placing that child with a relative because of Mother's drug use; (2) two prior cases involving Evan because of Mother's drug use; and (3) the Department's removing Evan from Mother's care in January 2019 and informing her that compliance with the family service plan was required to reunite with Evan. This demonstrated that Mother was unable or had refused to prioritize Evan over methamphetamine both before and during this case despite being notified that her drug use would lead to Evan's removal. The trial court could have reasonably inferred that Mother's conduct would recur if Evan were returned to her care. Although Mother's commitment to visitation with Evan during the case was commendable, the trial court was entitled to find that her subordinating her parenting responsibilities to her drug habit weighed in favor of terminating Mother's parental rights.

With regard to programs available to assist Mother to promote Evan's best interest, the record demonstrates that Mother did not address the underlying issues that triggered her drug usage or, thus, the issues preventing her from having Evan placed with her. Although Mother successfully completed rehab through Nexus, Mother was not successfully discharged from counseling, attended only five out of at least thirty-five possible CATS weekly group sessions (where she was "making things up"), did not demonstrate any attendance at NA, and did not enter any drug-court

23

programs. Mother also failed to appear for all requested drug tests and tested positive on all but one of the drug tests that she did take. The caseworker testified that Mother "was trying to do what she could without actually trying." The trial court was entitled to find that this factor weighed in favor of terminating Mother's parental rights.

As to the Department's plans for Evan, the caseworker testified that the plan for Evan was termination of Mother's rights and a permanent placement. The testimony at trial focused on Father's anticipated parole in March 2020 and on Father's relatively newly proposed paternal grandfather as a placement and, as another option, an unrelated adoption to the current adoption-motivated foster family. The caseworker testified that the Department would pursue both options with equal zeal and that, either way, Evan had a permanent place to be and would not need to be bounced around. The trial court was entitled to find that this factor weighed in favor of terminating Mother's parental rights.

With regard to the stability of Mother's home, the record reflects that Mother had been recently evicted, was living with Grandmother and Aunt J, was not able to find appropriate housing of her own, and had been recently arrested for prostitution. On the other hand, Evan had been with the same foster family for roughly one year since his removal in January 2019, and the record reflects that the foster family wanted to adopt Evan and that Evan was doing well in that home. The trial court was

entitled to find that this factor weighed in favor of terminating Mother's parental rights to Evan.

As to Mother's acts or omissions indicating that the existing parent–child relationship is not a proper one and any excuse for Mother's acts or omissions, although Mother was appropriate with Evan at her weekly visits, the record reflects that Evan was removed as a result of Mother's illegal drug use, as outlined above. Mother did not testify at trial to offer any excuse for her actions. Instead, the record reflects that she did not do the work necessary to address the reasons behind her drug usage. Mother does not argue on appeal that there was an excuse for her failure to abstain from using illegal drugs. The trial court was entitled to find that these factors weighed in favor of terminating Mother's parental rights.

After reviewing all the evidence, applying the appropriate standards of review, and deferring to the factfinder's credibility determinations, we hold that the trial court could have reasonably formed a firm conviction or belief that termination of the parent–child relationship between Mother and Evan was in Evan's best interest. We therefore hold the evidence factually sufficient to support the trial court's best-interest finding. *See* Tex. Fam. Code Ann. § 161.001(b)(2); *Jordan v. Dossey*, 325 S.W.3d 700, 732–33 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (holding evidence factually sufficient to support the trial court's best-interest finding when most of the best-interest factors weighed in favor of termination); *In re R.L.M.*, No. 04-18-00136-CV, 2018 WL 2943651, at *3 (Tex. App.—San Antonio June 13, 2018, pet. denied)

(mem. op.) (holding evidence factually sufficient to support the trial court's best-interest finding because mother had not stopped taking illegal drugs during the pendency of the case, had not addressed her substance-abuse problems or changed her behavior with respect to illegal drug use, and was incapable of meeting child's needs or of providing him with a safe and stable environment). We overrule Mother's third issue.

## VI.   Conclusion

Having overruled all three of Mother's issues, we affirm the trial court's judgment terminating Mother's parental rights to Evan.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered:  April 30, 2020